No. 15-1058

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
_____

ROBERT SCHAEFER, and the certified class
of similarly-situated persons,

Plaintiffs-Appellants,

v.

WALKER BROS. ENTERPRISES, INC.,
WALKER BROS. HIGHLAND PARK INC.,
WALKER FOOD SERVICES, INC.,
WALKER BROS. LAKE ZURICH, INC.,
WALKER BROS. LINCOLNSHIRE, INC.,
WALKER BROS. WEST, INC., and
RAY E. WALKER,

Defendants-Appellees.

_____

Appeal From The United States District Court
For The Northern District of Illinois,
Eastern Division

Case No. 10 C 6366

The Honorable Judge Charles Ronald Norgle
_____

BRIEF OF DEFENDANTS-APPELLEES
_____

Gerald L. Maatman, Jr.
Jennifer A. Riley
Matthew Gagnon
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000 (telephone)
(312) 460-7000 (facsimile)

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:  **15-1058**

Short Caption:  Schaefer v. Walker Bros., et al.

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

*Walker Brothers, Enterprises, Inc., Walker Brothers Highland Park, Inc., Walker Food Services, Inc., Walker Brothers Lake Zurich, Inc., Walker Brothers Lincolnshire, Inc., Walker Brothers West, Inc., Ray E. Walker*

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

*Seyfarth Shaw LLP*

(3)     If the party or amicus is a corporation:

i)     Identify all its parent corporations, if any; and

*Walker Brothers, Enterprises, Inc. – None*
*Walker Brothers Highland Park, Inc. – None*
*Walker Food Services, Inc. – None*
*Walker Brothers Lake Zurich, Inc. – None*
*Walker Brothers Lincolnshire, Inc. – None*
*Walker Brothers West, Inc. – None*

ii)     list any publicly held company that owns 10% or more of the party's or amicus' stock:

*Walker Brothers, Enterprises, Inc. – None*
*Walker Brothers Highland Park, Inc. – None*
*Walker Food Services, Inc. – None*
*Walker Brothers Lake Zurich, Inc. – None*
*Walker Brothers Lincolnshire, Inc. – None*
*Walker Brothers West, Inc. – None*

Attorney's Signature:  _/s/ Gerald L. Maatman, Jr._          Date:   _May 8, 2015_

i

Attorney's Printed Name:  **Gerald L. Maatman, Jr.**

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes**

Address:       **131 South Dearborn Street, Suite 2400 IL 60603**
Phone Number:       *(312) 460-5000*       Fax Number:  *(312) 460-7000*
E-Mail Address:       **gmaatman@seyfarth.com**

19630855v.13

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF ISSUES ...................................................................... 1

STATEMENT OF THE CASE.................................................................. 1

    I.     Walker Bros. Restaurants........................................................... 1

    II.    Servers' Job Duties And Responsibilities.................................... 2

    III.   Defendants Inform Servers Of The Tip Credit In Multiple Ways.......... 7

    IV.   Plaintiff Robert Schaefer.......................................................... 8

    V.    Schaefer's Lawsuit ................................................................. 11

    VI.   The District Court's Summary Judgment Decision.............................. 12

SUMMARY OF THE ARGUMENT ........................................................ 15

STANDARD OF REVIEW .................................................................... 16

ARGUMENT ....................................................................................... 17

    I.     The District Court Properly Ruled That Plaintiffs Did Not Perform "Dual Jobs" Under The IMWL And FLSA ............................ 17

          A.     The Department Of Labor Has Consistently Interpreted The FLSA As Allowing Tipped Employees To Perform Related Job Duties........................................................ 18

          B.     Courts Interpreting The Tip-Credit Provision Have Held, Consistent With The DOL's Interpretation, That Servers May Be Paid The Tip-Credit Wage For Time Spent On Related But Non-Tip-Producing Duties...................................... 21

          C.     The District Court Correctly Concluded That The Side Work Duties That Schaefer Performed Were Related To His Job As A Server.................................................... 24

    II.    The District Court Properly Ruled That Defendants Satisfied The Notice Provision Of The FLSA .................................................... 33

CONCLUSION................................................................................... 38

19630855v.13

# TABLE OF AUTHORITIES

<div align="right">

**Page(s)**

</div>

CASES

*Ammons v. Aramark Uniform Servs., Inc.,*
368 F.3d 809 (7th Cir. 2004) ................................................................. 37

*Anderson v. Chrysler Corp.,*
99 F.3d 846 (7th Cir. 1996) ................................................................... 17

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................ 16

*Argyropoulos v. City of Alton,*
539 F.3d 724 (7th Cir. 2008) ................................................................. 16

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................................ 16

*Chan v. Triple 8 Palace, Inc.,*
No. 03-CV-6048, 2006 WL 851749 (S.D.N.Y. 2006) ............................. 34

*Chhab v. Darden Rests., Inc.,*
No. 11 Civ. 8345, 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013)........... 21

*Dorsey v. TGT Consulting,*
888 F. Supp. 2d 670 (D. Md. 2012) ....................................................... 34

*Driver v. AppleIllinois, LLC,*
739 F.3d 1073 (7th Cir. 2014) ........................................................ 20, 31

*Driver v. AppleIllinois, LLC,*
890 F. Supp. 2d 1008 (N.D. Ill. 2012) ...........................................passim

*Fast v. Applebee's Int'l, Inc.,*
638 F.3d 872 (8th Cir. 2011) ...................................................... 17, 20, 21

*Flood v. Carlson Rests. Inc.,*
No. 14 Civ. 2740, 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) ........... 20

*Kilgore v. Outback Steakhouse of Florida, Inc.,*
160 F.3d 294 (6th Cir. 1998) ................................................. 34, 35, 36, 37

*Kotwica v. Rose Packing Co., Inc.,*
637 F.3d 744 (7th Cir. 2011) ................................................................. 16

<div align="center">

iv

</div>

*Montijo v. Romulus Inc.,*
No. 14-CV-264, 2015 WL 1470128 (D. Ariz. Mar. 31, 2015) ........................... 21, 22

*Murray v. Chicago Transit Auth.,*
252 F.3d 880 (7th Cir. 2001) ................................................................. 16

*Myers v. Copper Cellar Corp.,*
192 F.3d 546 (6th Cir. 1999) ................................................................ 17

*Pellon v. Business Representation International, Inc.,*
528 F. Supp. 2d 1306 (S.D. Fla. 2007), *aff'd,* 291 F. App'x 310 (11th Cir.
2008) ................................................................................ 23, 24, 35, 37

*Richardson v. Mountain Range Rests. LLC,*
No. CV-14-1370-PHX-SMM, 2015 WL 1279237 (D. Ariz. March 20, 2015) ......... 22

*Roberts v. Apple Sauce, Inc.,*
No. 3:12-CV-830-TLS, 2013 WL 2083467 (N.D. Ind. May 13, 2013) ........ 22, 23, 28

*Roussell v. Brinker Int'l, Inc.,*
441 F. App'x 222 (5th Cir. 2011) ........................................................... 20

*Townsend v. BG-Meridian, Inc.,*
No. 04-CV-1162-F, 2005 WL 2978899 (W.D. Okla. Nov. 7, 2005) .................. 24, 25

STATUTES

820 ILCS § 105/4(c) ............................................................................ 18

29 U.S.C. § 203(m) ....................................................................... 34, 37

29 U.S.C. § 203(t) .............................................................................. 18

Fair Labor Standards Act (FLSA) ................................................... passim

OTHER AUTHORITIES

29 C.F.R. § 531.56(e) ..................................................................... passim

29 C.F.R. § 531.59(b) ................................................................... 18, 34

Fed. R. Civ. P. 23 ............................................................................... 11

Fed. R. Civ. P. 23(f) .......................................................................... 31

Fed. R. Civ. P. 26 ............................................................................... 11

Fed. R. Civ. P. 30(b)(6) ...................................................................... 12

v

Fed. R. Civ. P. 56(c) ................................................................................... 16

FRAP Rule 32................................................................................................ 1

FRAP Rule 32(a)(7)....................................................................................... 1

FRAP Rule 32(a)(7)(B) .................................................................................. 1

Local Rule 56.1(b)(3) ................................................................................... 12

U.S. Dep't of Labor, Wage and Hour Division, Opinion Letter WH-502, 1980
   WL 141336 (March 28, 1980) ................................................... 20, 29, 30

## STATEMENT OF JURISDICTION

Appellant Robert Schaefer's ("Schaefer") jurisdictional statement is complete and correct.

## STATEMENT OF ISSUES

1.      Whether the District Court properly granted summary judgment with respect to Schaefer's "dual jobs" claim because Schaefer failed to present evidence sufficient to create a genuine issue of material fact that the side work tasks performed by servers at Defendants' restaurants are related to their occupation and primary duty of serving their customers by responding to their customers' needs and not unrelated to it.

2.      Whether the District Court properly granted summary judgment with respect to Schaefer's "notice" claim because Schaefer failed to present evidence sufficient to create a genuine issue of material fact that Defendants failed adequately to inform their servers of the tip credit when they:  (1) gave the servers an employee handbook, which contained information regarding the tip credit; (2) provided servers a "Server Uniform and Tip Credit Agreement"; (3) informed servers about the tip credit during training and orientation; and (4) displayed posters describing the tip credit.

## STATEMENT OF THE CASE

I.     Walker Bros. Restaurants

Defendants-Appellees (collectively referred to herein as "Defendants") own and operate six restaurants in the suburbs of Chicago.  R. 147, Defs.' L.R. 56.1

Stmt. Fact, ¶ 1.[1]  Those restaurants are located in Arlington Heights, Highland Park, Wilmette, Lake Zurich, Lincolnshire, and Glenview, Illinois, and operate under the name "The Original® Pancake House."  *Id.*  A General Manager operates each restaurant, and each General Manager, in turn, supervises multiple Shift Managers.  *Id.* ¶ 3.  During the relevant time period – from October 2007 until the date that Defendants moved for summary judgment, March 5, 2014 – Defendants had employed more than 500 servers, 6 different General Managers and 21 different Shift Managers.  *Id.* ¶¶ 2-3.

Defendants pay non-exempt personnel, including servers, by the hour.  *Id.* ¶ 4; R. 148, Declaration of Kevin Donoghue, ¶ 6.  The hourly wage depends on the job that the employee is performing during his or her shift.  For instance, when a server works as a host, Defendants pay an hourly rate equal to or higher than minimum wage.  R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 4; R. 148, Declaration of Kevin Donoghue, ¶ 6.  When a server performs server duties, Defendants pay an hourly wage that accounts for the tip credit.  R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 4; R. 148, Declaration of Kevin Donoghue, ¶ 6.

II.     Servers' Job Duties And Responsibilities

Servers' primary responsibility is serving customers.  R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 13.  Servers and managers use "side work" as a short-hand term to refer to tasks performed in server areas that enable servers to respond quickly and

---

[1] As used herein, "R." refers to documents on the District Court's docket (and their respective numbers), "App. Br." refers to Appellants' opening brief, and "Appx." refers to the appellant's appendix attached to the opening brief. "Decl." refers to the declaration of the relevant named declarant.

efficiently to customer needs and improve customers' overall experiences.  *Id.* ¶ 14. The Original® Pancake House franchise does not have an operations manual, and Defendants have not developed one on their own.  *Id.* ¶ 32.  No manual instructs General Managers how to run their restaurants; as a result, General Managers have discretion to operate – and in fact do operate – their locations in different ways.  *Id.*  Defendants likewise have no corporate policy regarding side work.  *Id.* ¶ 33.  There is no single or uniform list of side work tasks applicable to or used at all six restaurants, and the restaurants' side work practices are not uniform.  *Id.* General Managers at the restaurants decide, for instance, who should perform which tasks and have discretion to modify side work to respond to changes in customer volume or staffing.  *Id.*

The amount and types of side work that servers perform vary depending on numerous factors, including, for example, the type of shift (e.g., opening shift, break shift, evening shift, closing shift), the time of the shift, the restaurant location, the preferences of the general manager and shift manager, the station to which each server is assigned, the types of menu items available, the number of customers, the demands of the customers, the day of the week, the time of the year, the number of other servers working, and individual server speed and preferences.  *Id.* ¶ 17. However, the record evidence demonstrates that the time servers spent on side work was limited:

- "The amount of time it takes me to perform my side work is hard to measure. . . . If I waited until all of my tables were gone to start my side work, it probably would take me about 10 to 15 minutes.  Whereas it might sound like

a lot of tasks, they are very simple and most do not need to be performed every day." R. 147-8, Domenico Decl., ¶¶ 13-14.

- "[I]f I work the opening shift at 6:15 a.m., I perform various tasks so that I am ready to serve customers . . . [t]his work takes about 15 minutes. . . . I also perform different tasks when I work evening shifts. . . . At night, the amount of side work . . . might take very little or no time at all. Side work might take 2 minutes, or it might take 15 to 20 minutes." R. 147-3, Basgall Decl., ¶¶ 6, 8, 15.

- "If I had to estimate the amount of time that I spend on side work, I would estimate that I spend less than five minutes during my shift and maybe ten to fifteen minutes at the end of my shift while I am waiting for my customers to finish. Some days, I spend more time doing side work during my shift and less time at the end. During a seven-hour shift, I would estimate that I spend less than 30 minutes on side work." R. 147-19, Santiago Decl., ¶ 12.

The performance of side work is part and parcel of servers' primary responsibility, which is (and always has been) the service of customers. R. 147, Defs. L.R. 56.1 Stat. Facts, ¶ 13. Proper performance of side work responsibilities enables servers to respond quickly and efficiently to customer needs, such as by delivering drinks, dishes, condiments, garnishes, or any other items that customers request. *Id.* ¶ 15. Servers spend some time stocking such items at their server stations so that those items are readily available and servers can deliver them quickly and seamlessly upon request. *Id.* ¶ 16. This makes their service faster and more efficient. *Id.*

Defendants introduced extensive evidence to demonstrate the type of side work that servers perform and how long that work typically takes. For example, servers working the opening shift might "brew iced tea and coffee, start the soup warmer, and bring out a cart containing items such as bread, mushroom sauce, and blueberry compote," R. 147-8, Domenico Decl., ¶ 7, or "turn on the toaster, pull out

4

the jellies and lemons, fill the ice bucket to keep the salsa cool, pour water into the crock pot to keep the soup warm, and start the iced tea and coffee." R. 147-6, Cox Decl., ¶ 6.

During their shift, servers maintain their areas of responsibility and make sure that garnishes and other items remain stocked so that they can be quickly and efficiently delivered to customers. That might include "slic[ing] fruit, refill[ing] jelly trays, restock[ing] bread, and slic[ing] lemons," R. 147-9, Esquivel Decl., ¶ 5, or "restock[ing] the refrigerator in the server area with milk and whip cream, and ensuring that the syrup, soda, and hot chocolate machines are ready when customers order such items," R. 147-3, Basgall Decl., ¶ 7. The record evidence shows that servers understood that these tasks allowed them to serve their customers more quickly and efficiently and to improve customers' overall experiences:

- "As a server for Walker Bros., the tasks that I perform are aimed at serving customers and enhancing their dining experience. . . . Side work consists of tasks that directly relate to serving customers throughout the day and are essential to good customer service. . . . If servers did not perform side work, every server would need to perform tasks like filling individual jelly jars . . . every time he or she received a customer request." R. 147-6, Cox Decl., ¶¶ 4, 7.

- "[A]ll of the work that we perform throughout the day relates to delivering good customer service. If servers do not perform these tasks, they cannot deliver the type of service that leads to tips. . . . As a server for Walker Bros., I have never performed a task that was not related to my duties as a server." R. 147-7, Curio Decl., ¶ 10.

- "Servers put strawberries on the top of the strawberry waffles and the chocolate crepes right before serving them to the customer. . . . Because Walker Bros. serves breakfast, my tasks at Walker Bros. are geared toward serving customers the items they order with breakfast." R. 147-8, Domenico Decl., ¶¶ 15-16.

5

- "As a server for Walker Bros., the tasks that I perform all revolve around serving customers and making their dining experiences better." R. 147-3, Basgall Decl., ¶ 4.

- "Customers tip based on many factors, including speed of service. Thus, if servers ensure that 'little things' are done like having the strawberries ready to serve with a customer's meal, I can serve my customers better, and I have found that this has led to better tips. On the other hand, for instance, if a customer requests honey for his tea and I have to track down the honey, the hot water for the tea might cool off in the meantime, leaving the customer waiting longer and less satisfied with my service." R. 147-20, Sheikh Decl., ¶ 10.

- "The side work servers perform is directly related to serving the customer. . . . For instance, if strawberries are not ready, then we cannot serve fresh strawberries with pancakes if they are ordered by a customer. This is also true with other types of side work, such as slicing lemons for iced tea or making coffee." R. 147-22, Zelman Decl., ¶ 8.

*See also* R. 147-5, Cotter Decl., ¶ 9; R. 147-10, Gaul Decl., ¶ 16; R. 147-11 Grant Decl., ¶ 4; R. 147-16, Pryce Decl., ¶ 4.

Servers did not perform complicated food preparation that would be handled by the restaurants' cooks. For example, servers might stir some Cointreau into sour cream or place a scoop of ice cream on a customer's waffles to prevent it from melting before reaching the customer. R. 179-8, Donoghue Dep. Tr. at 160:24-161:17, 183:9-18. Or servers might stir fresh blueberries into blueberry compote – after the cooks make the compote by heating sugar in blueberry juice – to ensure that the blueberries do not get mushy before reaching the customer. *Id.* at 162:3-163:2. The record also demonstrates that servers did not perform non-server duties such as cleaning or restocking bathrooms, washing dishes, cleaning areas of the restaurant such as chandeliers, floors, windows or window blinds, and they did not pick up trash in the parking lot or take out the garbage. R. 147, Defs.' L.R. 56.1

6

Stmt. Fact, ¶¶ 18-31.  Most importantly, servers did not cook food and they did not work in the kitchen.  *Id.* ¶ 31; R. 179-8, Donoghue Dep. Tr. at 78:9-79:23.

### III.     Defendants Inform Servers Of The Tip Credit In Multiple Ways

Defendants inform servers about the tip credit in various ways.  For instance, servers learn of the tip credit from the employee handbook, which states:  "Tip credit (for servers):  Employers in Illinois may also apply a tip credit of 40% of minimum wage against wages paid for tipped employees."  R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 5.  Servers also learn of the tip credit upon hire by reading and signing a "Server Uniform and Tip Credit Agreement" contained within the hiring packet.  *Id.* ¶ 6.  When Schaefer was hired, the tip credit acknowledgement provided:  "Tip Credit.  I understand that a portion of the wages I receive are from tips.  The Company can apply a credit to the minimum wage to include those tips as wages.  The tip credit in Illinois is 40% of minimum wage."  *Id.* ¶ 7.  Servers also learn of the tip credit during new server training or orientation.  *Id.* ¶ 8; R. 147-2, Avila Decl., ¶ 7; R. 147-3, Basgall Decl., ¶ 16; R. 147-7, Curio Decl., ¶ 12; R. 147-9, Esquivel Decl., ¶ 10; R. 147-12, Lake Decl., ¶ 20; R. 147-13, Lekakh Decl., ¶ 17; R. 147-14, Lopez Decl., ¶ 12; R. 147-16, Pryce Decl., ¶ 10; R. 147-18, Roman Decl., ¶ 13; R. 147-19, Santiago Decl., ¶ 13; R. 147-22, Zelman Decl., ¶ 9.  Finally, Defendants inform servers of the tip credit by displaying posters approved by the Illinois Department of Labor ("IDOL") and the United States Department of Labor ("DOL") in well-traveled locations in their restaurants.  R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 10.  And since May 2011, Defendants have posted a permanent Memorandum

7

listing the Department of Labor's clarifications of how tipped employees are paid. *Id.* ¶ 9.

IV.    Plaintiff Robert Schaefer

Plaintiff Robert Schaefer ("Schaefer") worked as a server for Walker Food Services, Inc. in Wilmette from November 2005 to November 2006, and he worked as a server for Walker Bros. West, Inc. in Glenview from November 2006 to August 2009. *Id.* ¶ 34. He also worked one shift for Walker Bros. Highland Park, Inc. during 2006. *Id.* He has no experience working at any other locations and, except for two months, he worked with only one General Manager. *Id.* During the time he worked for those Defendants, Schaefer never complained about the tasks he performed or the manner in which he was paid. *Id.* ¶ 35. To the contrary, Schaefer testified that he knew throughout his tenure that he would be paid part of his wages in tips, and this was one reason he applied for the job. *Id.*

Schaefer admitted that he performed his side work duties in the server aisle rather than the kitchen. *See* R. 147-23, Schaefer Dep., at 264:1-15 ("Q. Where was that work performed? A. Cutting strawberries? . . . A. The server aisle is usually where it was performed."). He also admitted that his side work duties – such as cutting strawberries or lemons, and mixing applesauce, sour cream, or lingonberries – were performed for the purpose of making his customer service more efficient:

> Q.    So having the sour cream, the strawberries, the applesauce and the lingonberries prepared already, made serving – service more efficient at the restaurant; is that right?
>
> A.    Yes.
>
> Q.    Did it make food come to the table faster?

8

A.    Well, if you're more efficient, then in theory, yes.

Q.    And what would happen if this duty had not been done?

A.    Again, it would probably slow down service.

*Id.* at 277:12-23.

Schaefer acknowledged that he always understood that part of his pay would be in tips: "Q. So you knew throughout the entire time that you were a server at the Walker Brothers restaurants that you would be paid part of your salary in tips; is that right? . . . A. Yes." R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 12; R. 147-23, Schaefer Dep. Tr. at 108:23-109:7; R. 162, Pls.' Resp. to Defs.' Stmt. Fact, ¶ 12.

Moreover, the undisputed record evidence demonstrates that Defendants informed Schaefer of the tip credit in three ways. First, Defendants informed Schaefer of the tip credit through its employee handbook. Schaefer testified that he received and read a copy of Defendants' employee handbook, which contains a section describing the tip credit. R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 5; R. 147-23 Schaefer Dep. Tr. at 123:4-20; R. 162, Pls.' Resp. to Defs.' Stmt. Fact, ¶ 5. That section stated:

**TIP CREDIT AND TIP REPORTING**

Tip credit (for servers):

Employers in Illinois may also apply a tip credit of 40% of minimum wage against wages paid for tipped employees.

| | |
|---|---|
| Minimum wage | $5.15 |
| Tip Credit | -$2.06 |
| Hourly rate | $3.09 |

> Paycheck calculation to determine "Net Pay"
> Servers:
> Hours x Rate = Earnings
> Earnings + Tips = Gross Pay
> Gross Pay - Taxes = "Net Pay"

R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 5; R. 162, Pls.' Resp. to Defs.' Stmt. Fact, ¶ 5.

Second, Defendants informed Schaefer of the tip credit upon hire by providing him a "Server Uniform and Tip Credit Agreement" contained within their hiring packet. R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 6. That tip credit acknowledgement provided: "Tip Credit. I understand that a portion of the wages I receive are from tips. The Company can apply a credit to the minimum wage to include those tips as wages. The tip credit in Illinois is 40% of minimum wage." R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 7.

Third, Defendants informed Schaefer of the tip credit by displaying posters approved by the IDOL and DOL in well-traveled locations in their restaurants during his employment. R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 10; R. 162, Pls.' Resp. to Defs.' Stmt. Fact, ¶ 10. Both posters discuss the tip credit. *Id.* The federal poster discusses provisions of the FLSA. Among other things, it states:

> Employers of 'tipped employees' must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employee's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference. Certain other conditions also must be met.

R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 11; R. 162, Pls.' Resp. to Defs.' Stmt. Fact, ¶ 11. The poster also described the applicable minimum wage. *Id.*

V.    Schaefer's Lawsuit

On October 5, 2010, Schaefer[2] initiated this lawsuit claiming that Defendants improperly paid him and other servers a tip credit rate of pay for the time that he and other servers spent performing side work duties, and that Defendants failed to inform him and other servers of the provisions of the tip credit wage.  R. 1, Complaint, ¶¶ 13-24; 25-31.  The parties conducted their Rule 26 conference on March 2, 2011.  R. 179, Declaration of Gerald L. Maatman, Jr., ¶ 4.  The parties immediately began discovery.  Schaefer served his first request for production of documents and first set of interrogatories on May 18, 2011.  *Id.* ¶ 5.  Defendants responded to those discovery requests on June 30, 2011.  *Id.* ¶ 6.  Defendants served their first set of requests for production of documents on Schaefer on May 24, 2011.  *Id.* ¶ 7.  Schaefer responded to Defendants' document requests on July 1, 2011.  *Id.*  One of the documents produced in response to Defendants' document requests was the side work list for Defendants' Glenview restaurant.  *Id.*; R. 179-3, Glenview Side Work List.

On September 19, 2013, the District Court granted Plaintiffs' motion for class certification under Rule 23.  Appx. 015.  On December 2, 2013, the parties filed a joint proposed discovery schedule with the assigned magistrate judge to govern discovery during the post-certification time period, which was adopted by Magistrate Judge Schenkier on December 3, 2013.  R. 136; R. 137.  On March 5, 2014, Defendants moved for summary judgment on all claims.  R. 144.

---

[2] The original complaint was filed by Schaefer and another plaintiff, Nicholas Flax.  Mr. Flax withdrew from the case in July 2011.

On April 17, 2014 Schaefer's counsel deposed Defendants' Rule 30(b)(6) designee, Kevin Donoghue. R. 179, Declaration of Gerald L. Maatman, Jr., ¶ 16. Mr. Donoghue was questioned extensively concerning, among other things, the type and amount of side work that servers at Defendants' restaurants are required to perform. *Id.* ¶ 17. Thereafter, Schaefer's counsel sought and obtained additional discovery of side work lists and another opportunity to question Defendants' Rule 30(b)(6) designee. R. 180. Schaefer then sought to supplement the record with a Supplemental Local Rule 56.1(b)(3) Response to Defendants' Statement of Material Facts. R. 175-1, Pl.'s Supp. Response to Defs.' Stmt of Facts, Attachment A. The District Court granted that motion on December 17, 2014, the same day that the District Court granted Defendants' motion for summary judgment. R. 191; R. 192.

VI.    The District Court's Summary Judgment Decision

The District Court properly found that Schaefer's claim is a "dual jobs" claim, meaning that his claim is premised on the theory that he and other servers at Defendants' restaurants were not paid minimum wage for performing duties that were <u>unrelated</u> to their tipped occupation. Appx. 005-06. Duties that allegedly are "unrelated" to servers' tipped occupation are categorically distinct from non-tip-producing duties that are related to the tipped occupation. *Id.* at 006. Pursuant to relevant Department of Labor regulations and guiding precedent, employers may pay tipped employees the tip-credit wage for time spent on related duties, so long as those related but non-tip-producing duties do not take up more than 20% of their time. *Id.* at 006-07. The claims at issue in this case do not involve the time that servers spent on related but non-tip-producing duties; rather, Plaintiff alleges that

12

servers spent time performing duties that allegedly were unrelated to their occupation as servers in a restaurant. *Id.* The District Court therefore properly concluded that in order to succeed on their claims, "Plaintiffs bear the burden of showing that Defendants assigned side work to Plaintiffs that was unrelated to their tipped occupation of serving tables." *Id.* at 007. Ultimately, the District Court concluded that Plaintiffs had failed to meet that burden.

The District Court found that it was "undisputed that [Schaefer's] tipped occupation[] and primary duty is to 'serve' their customers by responding to the customers' needs, such as by delivering drinks, dishes, condiments, garnish, and other items that customers request." *Id.* at 010 (quotations omitted). The Court also reviewed the side work tasks that servers had to perform as reflected in the side work lists, servers' declarations, and Schaefer's testimony, and concluded that "[e]ven viewed in a light most favorable to Plaintiffs, the side work tasks performed by the restaurant servers are 'incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers.'" *Id.* (quoting DOL Filed Operations Handbook C. 30d00(e).) Those tasks included slicing produce and placing a scoop of ice cream on customers' waffle orders, which the Court found were different than the food preparation done by cooks, which was "more time consuming or complicated." *Id.* at 008. To illustrate the difference, the District Court noted that, while cooks would make blueberry compote by heating sugar in blueberry juice, the servers simply would stir blueberries into the compote before serving it. *Id.*

13

Most importantly, the District Court found that servers were not engaged in unrelated tasks such as scrubbing bathrooms, wiping down walls, washing windows, picking up trash in the parking lot, or doing cleaning that otherwise would be done by a contracted service. *Id.* at 009. As the District Court found, Schaefer admitted that servers did not clean bathrooms; wash dishes; clean chandeliers; mop, vacuum, or scrub floors; wash windows or window blinds; scrub walls; pick up trash in the parking lot; take out the garbage; or roll silverware. *Id.* Accordingly, the District Court concluded that Defendants' servers did not perform tasks that another court found unrelated to servers' tipped occupation in *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008 (N.D. Ill. 2012). *Id.* at 009-010.

With respect to Schaefer's notice claim, the District Court found that Defendants submitted evidence demonstrating that they informed servers of the tip credit by (1) giving the servers an employee handbook, which contains information regarding the tip credit; (2) having servers sign a "Server Uniform and Tip Credit Agreement"; (3) informing servers about the tip credit during training and orientation; and (4) displaying posters describing the tip credit. Appx. 011. The District Court found that Schaefer admitted that he read Defendants' employee handbook, that Defendants displayed posters discussing the tip credit, and that he knew that he would be paid a part of his salary in tips. *Id.* The District Court also found that other servers testified that the tip credit was explained to them during training or otherwise. *Id.*

14

In light of this evidence, the Court concluded that "[Schaefer's] assertion that he was not given adequate notice is not supported by the evidence," and that "[t]he undisputed facts and evidence show that Defendants adequately informed their servers, including [Schaefer], of the tip credit provisions. *Id.* at 011-12.

## SUMMARY OF THE ARGUMENT

The District Court correctly granted Defendants' summary judgment on both of Schaefer's claims.

First, the District Court properly determined that Defendants did not require restaurant servers to perform duties unrelated to their tipped occupation. Schaefer contends that Defendants employed servers in the "second occupation" of cook or janitor because they spent some amount of time during their shifts performing food-related or cleaning-related tasks. Schaefer argues these tasks do not fall within the scope of a server's job because they do not involve customer interaction. This claim is not supported by the applicable regulations, the DOL's interpretive guidance, or applicable case law. An employee's tipped status does not change simply because he or she spends some portion of his or her shift performing non-tipped duties. Indeed, the regulations specifically identify a server's "time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses" as time eligible for the tip credit. 29 C.F.R. § 531.56(e). Schaefer's contrary arguments lack merit.

Second, the District Court properly determined that Defendants provided servers with sufficient notice of the FLSA's tip credit provision. Schaefer admitted that he received and read a copy of Defendants' employee handbook with a

description of the tip credit, that Defendants displayed wage-and-hour posters approved by the DOL in their restaurants, and that Defendants informed servers of the tip credit upon hire by providing them a "Server Uniform and Tip Credit Agreement" contained in the hiring packet. Not surprisingly, Schaefer admitted that he always understood that he would receive a portion of his pay in tips. Accordingly, the District Court correctly concluded that Schaefer's mere assertion that he did not receive adequate notice was "not supported by the evidence" and not sufficient to create a genuine issue of material fact.

## STANDARD OF REVIEW

This Court reviews the District Court's grant of summary judgment de novo. *Kotwica v. Rose Packing Co., Inc.,* 637 F.3d 744, 747 (7th Cir. 2011). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On summary judgment the Court draws only reasonable inferences in the non-movant's favor, that is, inferences supported by fact, not fiction or speculation. *See, e.g., Argyropoulos v. City of Alton,* 539 F.3d 724, 732 (7th Cir. 2008) (noting that the court's favor to the non-movant does not extend to drawing "inferences that are supported by only speculation or conjecture") (citation omitted); *Murray v.*

16

*Chicago Transit Auth.*, 252 F.3d 880, 888 (7th Cir. 2001) (refusing to draw inferences in favor of plaintiff's speculative theories).

This Court may affirm the District Court's decision based on any reason supported by the record. *See Anderson v. Chrysler Corp.*, 99 F.3d 846, 855 n.5 (7th Cir. 1996).

## ARGUMENT

I.    The District Court Properly Ruled That Plaintiffs Did Not Perform "Dual Jobs" Under The IMWL And FLSA

Schaefer claims on behalf of a class that Defendants violated the tip credit provision of the IMWL by allegedly requiring servers to perform "dual jobs." Schaefer asserts a similar claim under the FLSA.[3]  Because the IMWL mirrors the FLSA on this issue, the District Court correctly applied the same analysis to both statutes.  Appx. 005-06.  As the District Court explained, "an employee who brings suit . . . for unpaid minimum wages . . . has the burden of proving that he performed work for which he was not properly compensated."  *Id.* at 005 (*quoting Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1028 (N.D. Ill. 2012).  Accordingly, Schaefer bears the burden of showing that he and the class "were not performing

---

[3] The Sixth and Eighth Circuits have recognized that the distinction between duties related or unrelated to a tipped occupation requires courts to look at the amount of time spent on each activity. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549-50 (6th Cir. 1999) (holding that servers who spent some of their time performing food preparation tasks (making salads) could participate in a tip pool, whereas those who spent their entire shifts doing so could not participate); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) (finding that whether duties are related to a tipped occupation depends on the "length of time an employee spends performing [those duties]").  Here, however, Schaefer claims that Defendants should have compensated servers at minimum wage for any time spent on these alleged unrelated duties, *regardless of the percentage of time they spent on such duties.*

their tipped occupations for at least a portion of their shift." *Driver,* 890 F. Supp. 2d at 1029. The District Court correctly found that Schaefer did not introduce sufficient evidence to create a genuine issue of material fact on this claim.

A.    The Department Of Labor Has Consistently Interpreted The FLSA As Allowing Tipped Employees To Perform Related Job Duties

An employer may take a tip credit for "hours worked by [an] employee in an occupation in which [he] qualifies as a 'tipped employee.'" 29 C.F.R. § 531.59(b). Under either the FLSA or IMWL, that means an employer may take a tip credit for hours worked in an occupation in which an employee customarily and regularly receives tips. 820 ILCS § 105/4(c); 29 U.S.C. § 203(t). Neither the FLSA nor the IMWL contains any provision regarding "dual jobs."

In the regulations interpreting the FLSA, the DOL noted that, in some instances, an employee might be engaged in dual jobs, such as "where a maintenance man in a hotel also serves as a waiter":

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter.

29 C.F.R. § 531.56(e). The DOL, however, expressly distinguished such situations from those involving "waitresses" or "countermen" who perform tasks related to their jobs – such as cleaning tables, toasting bread, washing dishes, or taking turns as short order cooks:

> Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short

orders or who, as part of a group of countermen, takes a turn as a short
order cook for the group.  Such related duties in an occupation that is a
tipped occupation need not by themselves be directed toward producing
tips.

*Id.*

The DOL similarly recognized in its Field Operations Handbook that an

employer can take the tip credit for duties related to an occupation – like

"maintenance and preparatory or closing activities" – even though such duties do

not produce tips:

> Reg 531.56(e) permits the taking of the tip credit for time spent in
> duties related to the tipped occupation, even though such duties are
> not by themselves directed toward producing tips (i.e. maintenance
> and preparatory or closing activities).  For example a waiter/waitress,
> who spends some time cleaning and setting tables, making coffee, and
> occasionally washing dishes or glasses may continue to be engaged in a
> tipped occupation even though these duties are not tip producing,
> provided such duties are incidental to the regular duties of the server
> (waiter/waitress) and are generally assigned to the servers.

U.S. Dept. of Labor Field Operations Handbook Ch. 30d00(e) (Dec. 9, 1988)

(available at http:// www.dol.gov/whd/FOH); *see* U.S. Dept. of Labor Fact Sheet #15:

Tipped Employees Under the Fair Labor Standards Act, Revised July 2013 ("The

FLSA permits an employer to take the tip credit for some time that the tipped

employee spends in duties related to the tipped occupation, even though such duties

are not by themselves directed toward producing tips.  For example, a waitperson

who spends some time cleaning and setting tables, making coffee, and occasionally

washing dishes or glasses is considered to be engaged in a tipped occupation even

though these duties are not tip producing.") (available at http://www.dol.gov).

19

Further, the DOL has advised employers that clean-up tasks performed after closing qualify for the tip credit.  U.S. Dep't of Labor, Wage and Hour Division, Opinion Letter WH-502, 1980 WL 141336 (March 28, 1980).  In particular, in 1980, the DOL issued an Opinion Letter wherein it concluded that time spent by servers after a restaurant closed cleaning the salad bar, placing condiment crocks in the cooler, cleaning and stocking the waitress stations, cleaning and resetting the tables (including filling cheese, salt and pepper shakers), and vacuuming the dining room carpet "constitute tipped employment within the meaning of the regulation."  *Id.*  In essence, the DOL concluded that the servers were not engaged in dual jobs while they were performing the "after-hours clean-up."  *Id.*

Whether styled as "dual jobs" or "unrelated duties," the regulations and interpretations emanating from the DOL are clear: employers may pay servers the tip-credit wage for the time that they spend performing the duties of a server, even if the activities that servers perform are not all tip producing.  Only employers who also engage servers in a different capacity – a different job – must distinguish between the time servers spend performing their jobs as servers and the time they spend performing the duties of their second occupation.

As the District Court correctly recognized, "[c]ourts give deference to the agency's interpretation."  Appx. 005-06 (citing *Driver*, 739 F.3d at 1075 (citing *Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 877 (8th Cir. 2011))); *see also Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 232 (5th Cir. 2011) (citing *Fast* and noting that "[w]e give the regulation deference"); *Flood v. Carlson Rests. Inc.*, No. 14 Civ. 2740,

20

2015 WL 1396257, at *7 (S.D.N.Y. Mar. 27, 2015) (agreeing with the "Eighth

Circuit's well-reasoned decision in *Fast*" that accorded *Auer* deference); *Chhab v.*

*Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *3 (S.D.N.Y. Sept. 20,

2013) (noting that "certain courts have concluded that the twenty percent limit on

side work under the federal tip credit is entitled to deference"). *But see Montijo v.*

*Romulus Inc.,* No. 14-CV-264, 2015 WL 1470128, at *10 (D. Ariz. Mar. 31, 2015)

(declining to give deference under 9th Circuit precedent).

> B.    Courts Interpreting The Tip-Credit Provision Have Held, Consistent
>       With The DOL's Interpretation, That Servers May Be Paid The Tip-
>       Credit Wage For Time Spent On Related But Non-Tip-Producing
>       Duties

Several courts have addressed the inapplicability of the dual jobs regulation

to workers in a single job who perform both tipped and non-tipped activities, but the

Seventh Circuit has not issued any binding decision on the issue. Most recently, in

*Montijo*, the court concluded that the dual jobs allegations made by servers at IHOP

restaurants failed to state a claim under the FLSA. 2015 WL 1470128, at *12.

More egregious than Schaefer's allegations here, the plaintiffs claimed that they

had to perform "non-tipped non-related duties," such as "taking out trash, scrubbing

walls, . . . deep cleaning the floors, . . . mopping, rolling out rugs from the hallways

and front lobby to sweep clean the rugs and hard floors, [and] cleaning and deep

cleaning both restrooms." *Id.* The court granted summary judgment on their claim,

holding that plaintiffs' performance of the side work described "does not mean that

they were performing the duties of a different job classification." *Id.* at *13. Rather,

"a server's occupation involves side work, including the miscellaneous cleaning duties" that plaintiffs alleged:

> The server's performance of incidental side work does not mean that a server is performing another job classification. It is undisputed that these tasks were regularly assigned to IHOP's servers, were part of the Server Job Description, and were included in the Server Station Learning Guide. IHOP is entitled to take the tip credit for the entirety of the tipped server occupation. Thus, . . . the Court finds that [plaintiffs] were only performing one occupation, the server position, not two occupations.

*Id.* at *13. The court noted that plaintiffs' theory would have "the net effect of allowing a server to do nothing during slow periods at a restaurant . . . or require the restaurant to pay the server additional sums to help out around the restaurant. The law does not require that result." *Id.; see Richardson v. Mountain Range Rests. LLC,* No. CV-14-1370-PHX-SMM, 2015 WL 1279237, at *8 (D. Ariz. March 20, 2015) ("The dual jobs regulatory framework identifies an employee performing two or more entirely distinct, non-overlapping jobs. . . . [Plaintiff] was engaged in one occupation, server. Section 531.56(e) specifically allows a server to engage in incidental related duties. Thus, the server occupation inherently includes side work.").

Similarly, in *Roberts v. Apple Sauce, Inc.*, No. 3:12-CV-830-TLS, 2013 WL 2083467 (N.D. Ind. May 13, 2013), the court rejected plaintiff's theory that "non-tipped" duties must be compensated at minimum wage regardless of the percentage of time employees spend on such tasks or whether the tasks are generally assigned to servers. *Id.* at *4-6. Also more egregious than Schaefer's allegations here, the plaintiff in *Roberts* claimed that tipped employees were required "to perform

dishwashing, food preparation, kitchen and bathroom cleaning, trash removal, and other duties outside the scope of the tipped occupations, while paying those employees at the tip-credit wage rate." *Id.* at *3. The court concluded that plaintiff's claim was "based on a faulty legal conclusion." *Id.* at *4. It stated:

> Servers, bartenders, and hosts – who directly relate[] with customers – are not also employed in the second occupation of dishwasher, cook, or janitor simply because an unspecified amount of time during their shift is spent performing the duties cited in the Amended Complaint: 'dishwashing, food preparation, kitchen and bathroom cleaning, [and] trash removal.'

*Id.* at *5. In dismissing plaintiff's claim, the court relied on the dual jobs regulation and the DOL's Handbook and Opinion Letter, all of which confirmed that such duties were related to a servers' occupation. *Id.* at *5-6.

In *Pellon v. Business Representation International, Inc.*, 528 F. Supp. 2d 1306 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008), airport skycaps argued that they should have been paid full minimum wage for certain tasks that did not produce tips. The court relied on the dual jobs regulation and found that skycaps "are most similar to waitresses under [DOL] regulations," as opposed to persons dually employed as waiters and maintenance men. *Id.* at 1313. The court found that plaintiffs' duties were part of the normal duties of a skycap, and not those of another occupation, even if there was some overlap among tasks between different jobs. *Id.* That is, at worst, they were "related duties in an occupation that is a tipped occupation" that "need not by themselves be directed toward producing tips." *Id.* (quoting 29 C.F.R. 531.56(e).) Because the plaintiffs did not have dual jobs, the court granted the employer's motion for summary judgment. *Id.* at 1315.

23

The Eleventh Circuit affirmed "on the basis of the district court's well-reasoned order." 291 F. App'x 310.

In *Townsend v. BG-Meridian, Inc.*, No. 04-CV-1162-F, 2005 WL 2978899, at *6 (W.D. Okla. Nov. 7, 2005), a server claimed that her employer violated the FLSA when it applied the tip credit to the portions of her shift spent operating the cash register and taking phone orders. Relying on the dual jobs regulation, the court noted that "a tipped employee's status does not change simply because she is called upon to perform non-tipped duties related to her job. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." *Id.* at *7. The court found that the server's "cash register and phone duties were merely related duties incident to her waitress position." *Id.* Accordingly, the court granted summary judgment because the employer was entitled to apply a tip credit to the entirety of the plaintiff's server shifts, "not just those hours spent directly serving tables." *Id.*

Courts addressing this issue therefore have come to the same conclusion as the DOL and the District Court in this case. A rule that requires employers to pay different rates depending on the nature of the different individual duties that servers perform every day as part of their job would be completely unworkable. And that rule finds no support in the law or regulations.

C.    The District Court Correctly Concluded That The Side Work Duties That Schaefer Performed Were Related To His Job As A Server

The District Court held that the primary job of servers is to "'serve' their customers by responding to the customers' needs, such as by delivering drinks,

dishes, condiments, garnish, and other items that customers request." Appx. 010 (quotations omitted). The Court also reviewed the side work tasks that servers had to perform as reflected in the side work lists, servers' declarations, and Schaefer's testimony, and concluded that "[e]ven viewed in a light most favorable to Plaintiffs, the side work tasks performed by the restaurant servers are 'incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers.'" *Id.* (quoting DOL Field Operations Handbook Ch. 30d00(e).)

This was the correct conclusion based on the record presented to the District Court. Defendants submitted extensive, undisputed evidence to show that the side work tasks that servers performed were related to their primary responsibility of serving customers. During the opening shift, that could mean having to "brew iced tea and coffee, start the soup warmer, and bring out a cart containing items such as bread, mushroom sauce, and blueberry compote," R. 147-8, Domenico Decl., ¶ 7, or "turn on the toaster, pull out the jellies and lemons, fill the ice bucket to keep the salsa cool, pour water into the crock pot to keep the soup warm, and start the iced tea and coffee." R. 147-6, Cox Decl., ¶ 6. During their shift, that could include restocking essential garnishes and other items that must be quickly and efficiently delivered to customers, including "slic[ing] fruit, refill[ing] jelly trays, restock[ing] bread, and slic[ing] lemons," R. 147-9, Esquivel Decl., ¶ 5, or "restock[ing] the refrigerator in the server area with milk and whip cream, and ensuring that the syrup, soda, and hot chocolate machines are ready when customers order such items," R. 147-3, Basgall Decl., ¶ 7. The testimony submitted by Defendants

25

demonstrated that servers understood that these tasks allowed them to serve their customers more quickly and efficiently and to improve customers' overall experience. *See* R. 147-6, Cox Decl., ¶¶ 4, 7; R. 147-7, Curio Decl., ¶ 10.; R. 147-8, Domenico Decl., ¶¶ 15-16; R. 147-3, Basgall Decl., ¶ 4; R. 147-20, Sheikh Decl., ¶ 10; R. 147-22, Zelman Decl., ¶ 8; R. 147-5, Cotter Decl., ¶ 9; R. 147-10, Gaul Decl., ¶ 16; R. 147-11 Grant Decl., ¶ 4; R. 147-16, Pryce Decl., ¶ 4. Even Schaefer admitted that his side work duties – such as cutting strawberries or lemons, and mixing applesauce, sour cream, or lingonberries – were performed for the purpose of making his customer service more efficient. R. 147-23, Schaefer Dep. at 277:12-23.

Schaefer failed to demonstrate that he engaged in "dual jobs" during his employment with Defendants because he failed to demonstrate the existence of a genuine issue of material fact that he performed work unrelated to his primary job of serving customers. While he worked as a server, Schaefer testified that he placed silverware on tables, made set-ups for jams, jellies, and salsa, made coffee, turned on the hot chocolate machine, and refilled juice pitchers and salt, pepper, and sugar caddies. R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 37. Schaefer also testified that he sometimes cut strawberries, lemons, and mushrooms, all of which were served to guests, *e.g.,* lemons are used as a garnish for certain pancakes and with tea. *Id.* Moreover, Schaefer testified that he "made" lingonberries, sour cream, and apple sauce, *i.e.*, mixed and poured servings from a container. *Id.* Schaefer also testified that he stocked items that servers use, such as butter, jams and jellies, powdered sugar, and whipped cream. *Id.* Finally, Schaefer testified that he cleaned his

26

section, occasionally dusted or polished brass in the front of the restaurant, cleaned or dismantled the hot chocolate and lemonade machine, and covered and put away jams and jellies.  *Id.*

According to Schaefer, these tasks were either "communal" – all servers were responsible for performing them every day – or they were assigned to server stations.  *Id.* ¶ 38.  As a result, the type and volume of this work varied daily.  *Id.* Some servers, for example, never cut fruits or mushrooms or wiped down or dusted woodwork.  *Id.* ¶ 18.  Schaefer admitted that these duties – like having the sour cream, strawberries, applesauce, and lingonberries prepared, the jams, jellies, and sauces set up, the juice pitchers refilled, the lemons cut – made his customer service more efficient.  *Id.* ¶ 39.  He also admitted that dusting and cleaning his section made the restaurant look "nicer" and affected customers' dining experience.  *Id.* ¶ 40.

Despite this record, Schaefer appeals claiming that servers sometimes engaged in "food preparation" because they "prepared sour cream and applesauce, and prepared 'set ups' for future customers."  App. Br. at 24.  Schaefer complains that servers did not perform such duties in response to requests from particular customers, alleges that servers performed activities similar to those performed by a "line cook," and theorizes that servers did not interact with customers while performing such tasks.  *Id.* at 20, 24.  Schaefer bases his arguments on an erroneous understanding of the law and the record.

27

Schaefer asks this Court to hold that only time spent performing duties "in response to a request of an individual customer" qualifies for the tip credit. (*Id.* at 23-24 (emphasis omitted).)  Such a result runs contrary to the tip-credit provisions and applicable regulations and would lead to unwarranted and unworkable results. Under Schaefer's theory, a tipped employee cannot make a pot of coffee for multiple tables, or before a customer requests coffee, under a tip credit rate of pay.  Rather, a server must make a new pot of coffee for each customer as each customer orders a cup.  But, if coffee is not ready to go when individual customers request it, a server cannot do his or her job – a server cannot serve coffee quickly or efficiently.  Neither the DOL regulations, nor the cases interpreting those regulations, compel employers or servers to act in such an impractical and counterproductive manner.

Schaefer did not introduce any evidence regarding the duties of any "line cook," and Defendants did not employ Schaefer and other servers in the "second occupation" of cook or janitor simply because they spent some amount of time during their shifts performing preparatory or cleaning tasks.  The regulations, the DOL's interpretive guidance, and the case law "lend no merit to the Plaintiff's proposition that duties like food preparation and general cleaning around the dining room cannot be incidental to the regular duties of a server."  *Roberts*, 2013 WL 2083467, at *6.  In the dual jobs regulation, the DOL specifically identified a server's "time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses" as duties that are related to his or her tipped occupation.  29 C.F.R. § 531.56(e).  In its Handbook, it likewise recognized

that servers may spend time on "maintenance and preparatory or closing activities," such as cleaning and setting tables, making coffee, and occasionally washing dishes or glasses. U.S. Dep't of Labor Field Operations Handbook Ch. 30d00(e) (Dec. 9, 1988). And, by opinion letter, the DOL advised that servers can spend time after-hours time cleaning the salad bar, placing condiment crocks in the cooler, cleaning and stocking the waitress stations, cleaning and resetting the tables (including filling cheese, salt and pepper shakers), and vacuuming the dining room carpet as "tipped employment within the meaning of the regulation." U.S. Dep't of Labor, Wage and Hour Division, Opinion Letter WH-502, 1980 WL 141336 (March 28, 1980).

The duties identified by Schaefer are all related or incidental to the regular duties of a server and are eligible for the tip credit. In determining the duties of a tipped employee, the DOL has directed employers and employees to its Occupational Information Network (O*Net), which lists the duties of nearly every job in the United States.[4] As part of the "core" duties of a server, O*Net identifies the very duties that Schaefer alleges are unrelated to that occupation. For example, O*Net identifies the following as among the "core" duties of a server:

- "Clean tables or counters after patrons have finished dining."

- "Roll silverware, set up food stations or set up dining areas to prepare for the next shift or for large parties."

- "Stock service areas with supplies such as coffee, food, tableware, and linens."

---

[4] O*Net was developed under the sponsorship of the DOL. *See* http://www.onetcenter.org/overview.html (visited May 5, 2015).

- "Prepare tables for meals, including setting up items such as linens, silverware, and glassware."

- "Perform cleaning duties, such as sweeping and mopping floors, vacuuming carpet, tidying up server station, taking out trash, or checking and cleaning bathroom."

- "Perform food preparation duties such as preparing salads, appetizers, and cold dishes, portioning desserts, and brewing coffee."

- "Fill salt, pepper, sugar, cream, condiment, and napkin containers."

*See* http://www.onetonline.org/link/details/35-3031.00 (visited May 5, 2015).

Schaefer's assertion that server duties must have "customer interaction" to quality as "related" to the job of a server is similarly devoid of merit. App. Br. at 20. According to Schaefer, "[c]ustomer interaction is the *sine qua non* of determining whether a duty is tip-producing, and thus a duty of a tipped occupation." *Id.* at 21. In the dual jobs regulation, however, the DOL expressly recognized that tipped employees can perform duties devoid of customer interaction, and can perform non tip producing duties, at the tip credit rate of pay. The DOL, for example, explained that tipped employees may perform duties such as making coffee and washing dishes – duties that are outside the presence of customers – and that "[s]uch related duties . . . need not by themselves be directed toward producing tips." 29 C.F.R. § 531.56(e); *see* U.S. Dept. of Labor Field Operations Handbook Ch. 30d00(e) (Dec. 9, 1988) (explaining that a server "who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation *even though these duties are not tip producing*") (emphasis added). Moreover, because servers do not engage in dual jobs while they perform "after-hours clean-up," U.S. Dept. of Labor, Wage and Hour Division,

Opinion Letter WH-502, 1980 WL 141336 (March 28, 1980), it is clear that every duty of a server need not include customer interaction. Indeed, Schaefer's argument that tipped employees must be paid minimum wage when they are outside the presence of patrons is nonsensical. Under Schaefer's theory, tipped employees constantly would have to clock in and out under different pay rates each time they leave their customers' field of vision.

Finally, to support his dual jobs claims, Schaefer relies on dicta in this Court's decision in *Driver v. AppleIllinois, LLC*, 739 F.3d 1073 (7th Cir. 2014). That case, however, is inapposite. There, the Court denied the defendant's petition for permission to appeal the district court's class certification decision under Fed. R. Civ. P. 23(f). *Id.* at 1074. The Court did not analyze the plaintiffs' dual jobs claim or provide any guidance on this issue.

What's more, the facts in that case are easily distinguishable. The plaintiffs in *Driver* worked as servers or bartenders at defendant's restaurants and received a tip credit wage. *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1010-11 (N.D. Ill. 2012). The undisputed evidence showed that the plaintiffs performed the following duties at the tip credit rate: cleaning bathrooms, including toilets, sinks, mirrors, and urinals; restocking bathrooms; loading and unloading the dishwasher and washing pots, pans, and rubber floor mats; cleaning chandeliers; sweeping, mopping, vacuuming, and scrubbing floors; washing windows; dusting and washing window blinds; scrubbing walls in the kitchen; picking up trash in the parking lot; taking out garbage; expediting food; rolling silverware; and dumping and refilling

the "sani" bucket.  *Id.* at 1030-32.  The evidence also demonstrated that it was the defendant's "general practice" to assign these duties and that tipped employees performed them "for much longer periods of time than can be fairly characterized as occasional, incidental or insignificant."  *Id.* at 1029.  Moreover, evidence showed that the defendant deliberately used tipped employees to perform the work of minimum wage employees to save money.  *Id.* at 1017, 1030-31 ("The 1999 corporate minutes reflect discussion of the savings that can be achieved based on the Chicago experience of using employees, including servers and hosts, to do the cleaning that would otherwise be done by a contracted service.").

By contrast, here, Schaefer admits that servers never cleaned bathrooms; never restocked bathrooms; never washed dishes; never cleaned chandeliers; never mopped, vacuumed, or scrubbed floors; never washed windows or window blinds; never scrubbed walls; never picked up trash in the parking lot; never took out garbage; never expedited food; never rolled silverware; never dumped and refilled the "sani" bucket; and never cooked food while working as servers.  R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶¶ 18-30.  Nor is there any evidence that Defendants sought to utilize servers to replace or perform the work of their minimum wage employees. Instead, all of the duties identified by Schaefer are server duties directed toward producing tips or incidental to producing tips.

Accordingly, the District Court correctly concluded that Schaefer failed to introduce evidence sufficient to create any genuine issue of material fact that servers performed dual jobs, and, therefore, his claims fail as a matter of law.

32

II.     The District Court Properly Ruled That Defendants Satisfied The Notice
        Provision Of The FLSA

Schaefer alleges that Defendants violated the FLSA by failing to inform

servers of their practice of taking the tip credit.[5]  Because Schaefer admitted that

Defendants provided servers notice of the tip credit, however, his claim fails.

The District Court found that "[t]he undisputed facts and evidence show that

Defendants adequately informed their servers, including [Schaefer], of the tip credit

provisions."  Appx. 012.  Defendants informed servers of the tip credit by:  (1) giving

the servers an employee handbook, which contains information regarding the tip

credit; (2) having servers read and sign a "Server Uniform and Tip Credit

Agreement"; (3) informing servers about the tip credit during training and

orientation; and (4) displaying posters describing the tip credit.  Appx. 011.  Indeed,

Schaefer admitted that he read Defendants' employee handbook, that Defendants

displayed posters discussing the tip credit, and that he knew that he would be paid

a part of his salary in tips.  *Id.*  Further, "[o]ther servers testified that the tip credit

was explained to them during training or otherwise."  *Id.*  On this evidence, the

District Court correctly concluded that "[Schaefer's] assertion that he was not given

adequate notice is not supported by the evidence" and that Schaefer's "mere

assertion to the contrary" did not create a genuine issue of fact."  *Id.* at 011-12.

---

[5] Before the District Court, Plaintiff claimed that Defendants did not provide adequate
notice under both the FLSA and IMWL.  The District Court dismissed both of these claims.
Plaintiff only appeals the District Court's dismissal of his FLSA notice claim on behalf of
himself and those who opted in.

The FLSA allows an employer to take a tip credit against the minimum wage for a tipped employee if the employee "has been informed by the employer of the provisions of this subsection."  29 U.S.C. § 203(m).  During the time that certain of the Defendants employed Schaefer, neither the FLSA nor the regulations defined what constitutes adequate notice under § 203(m).  In April 2011, the DOL promulgated a regulation specifying the information that employers are required to provide concerning the tip credit.  29 C.F.R. § 531.59(b).  That regulation became effective on May 5, 2011, almost two years after Schaefer's employment ended.  *Id.* Because the regulation does not apply retroactively, *Dorsey v. TGT Consulting,* 888 F. Supp. 2d 670, 684 (D. Md. 2012), it does not apply to Schaefer's claim.

Before the DOL issued the regulation, several courts addressed the type of notice that the FLSA requires.  In *Kilgore v. Outback Steakhouse of Florida, Inc.,* 160 F.3d 294 (6th Cir. 1998), for instance, the Sixth Circuit answered the question as follows:

> As to how the employer may deliver that information to the employee, we conclude that an employer must provide notice to the employees, but need not necessarily "explain" the tip credit. . . . The statute requires that the employee be "informed" of the tip credit.  As the magistrate judge concluded, "inform" requires less from an employer than the word "explain" would.

*Id.* at 298; *see Chan v. Triple 8 Palace, Inc.,* No. 03-CV-6048, 2006 WL 851749, at *19 (S.D.N.Y. 2006) ("Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it.").  In *Kilgore,* the Sixth Circuit found that the defendant adequately provided notice where it distributed a file folder containing various written materials, including a statement describing the tip

policy and stating "tips will be used as a credit against the minimum wage as permitted by federal and/or state law." 160 F.3d at 299. Similarly, in *Pellon*, 528 F. Supp. 2d at 1310, the court held that a prominently-displayed poster using language approved by the DOL was sufficient notice because it would "defy logic" to require the display of inadequate information regarding the minimum wage and employer tip credit.

Here, as the District Court found, Defendants provided servers sufficient notice of the tip credit in multiple ways. Accordingly, as the District Court found, Schaefer's mere assertion that he did not receive adequate notice is not supported by the evidence. Appx. 011. Servers swore that "the tip credit was explained to them during training or otherwise." *Id.*; *see* R. 147-2, Avila Decl., ¶ 7; R. 147-3, Basgall Decl., ¶ 16; R. 147-7, Curio Decl., ¶ 12; R. 147-9, Esquivel Decl., ¶ 10; R. 147-12, Lake Decl., ¶ 20; R. 147-13, Lekakh Decl., ¶ 17; R. 147-14, Lopez Decl., ¶ 12; R. 147-16, Pryce Decl., ¶ 10; R. 147-18, Roman Decl., ¶ 13; R. 147-19, Santiago Decl., ¶ 13; R. 147-22, Zelman Decl., ¶ 9. Schaefer admitted that he received notice in at least three ways such that he understood that he "would be paid part of [his] salary in tips." App. 011.

First, Schaefer admitted that he received and read a copy of Defendants' employee handbook, which contains a section describing the tip credit. R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 5. That section states:

**TIP CREDIT AND TIP REPORTING**

Tip credit (for servers):

35

Employers in Illinois may also apply a tip credit of 40% of minimum wage against wages paid for tipped employees.

| | |
|---|---|
| Minimum wage | $5.15 |
| Tip Credit | -$2.06 |
| Hourly rate | $3.09 |

Paycheck calculation to determine "Net Pay"
Servers:
Hours x Rate = Earnings
Earnings + Tips = Gross Pay
Gross Pay - Taxes = "Net Pay"

(*Id.*)  Not only does the handbook "inform the employee that [Defendants] intend[] to treat tips as satisfying part of [their] minimum wage obligation," *Kilgore*, 160 F.3d at 298, but it goes further and explains how the tip credit works.[6]  Indeed, Schaefer acknowledged that he always understood that part of his pay would be in tips:  "Q.  So you knew throughout the entire time that you were a server at the Walker Brothers restaurants that you would be paid part of your salary in tips; is that right?  . . . A.  Yes."  R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 12.

Second, Schaefer admitted that servers received notice of the tip credit upon hire by reading and signing a "Server Uniform and Tip Credit Agreement" contained within the hiring packet.  R. 147,  Defs.' L.R. 56.1 Stmt. Fact, ¶ 6; R. 162, Pls.' Resp. to Defs.' Stmt. Fact, ¶ 6.  That tip credit acknowledgement provided: "Tip Credit.  I understand that a portion of the wages I receive are from tips.  The Company can apply a credit to the minimum wage to include those tips as wages.  The tip credit in Illinois is 40% of minimum wage."  R. 147,  Defs.' L.R. 56.1 Stmt.

---

[6] Plaintiff's paycheck also identified his hourly rate and tips for each pay period.  R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 36.

36

Fact, ¶ 7; R. 162, Pls.' Resp. to Defs.' Stmt. Fact, ¶ 7.  Although Schaefer asserted

that he did not "learn[] about" the tip credit from that section, Schaefer failed to

support his assertion with any evidence.  *See* R. 162, Pls.' Resp. to Defs.' Stmt. Fact,

¶¶ 6-7.  *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir.

2004) (affirming striking of Rule 56.1 responses  that "fail to include a specific

reference to the affidavit or other part of the record that supports such a denial").

And, in any event, Schaefer did not dispute that Defendants informed their servers

of the tip credit through such document.  *See Kilgore*, 160 F.3d at 298 ("The statute

requires that the employee be 'informed' of the tip credit.").

Third, Schaefer admitted that Defendants displayed posters approved by the

IDOL and DOL in well-traveled locations in their restaurants during Schaefer's

employment.[7]  *Id.* ¶ 10.  The posters review § 203(m) and the tip credit in detail.  *Id.*

The federal poster states, among other things:

> Employers of 'tipped employees' must pay a cash wage of at least $2.13
> per hour if they claim a tip credit against their minimum wage
> obligation.  If an employee's tips combined with the employee's cash
> wage of at least $2.13 per hour do not equal the minimum hourly wage,
> the employer must make up the difference.  Certain other conditions
> also must be met.

*Id.* ¶ 11.  The poster also describes the applicable minimum wage.  *Id.*  Defendants'

display of these posters alone was adequate notice under the FLSA.  *See Pellon*, 528

F. Supp. 2d at 1311 (finding notice adequate where notice was "the poster that

Plaintiffs walk by multiple times a day every day that they work").

---

[7] Out-of-date posters are removed and replaced with current posters as they become
available.  R. 147, Defs.' L.R. 56.1 Stmt. Fact, ¶ 10.

Finally, although Schaefer denied that anyone explained the tip credit to him, R. 162, Pls.' Resp. to Defs.' Stmt. Fact, ¶ 8, the District Court properly concluded that such self-serving denial, by itself, was insufficient to create a genuine issue of material fact that Defendants provided proper notice.  Because it is undisputed that Defendants informed servers of the tip credit through their employee handbook, tip credit agreement, and posters prominently displayed in the restaurants, and Schaefer admitted that he knew that he would be paid part of this salary in tips, the District Court correctly concluded that Defendants were entitled to summary judgment regarding the notice provision of the FLSA.  Appx. 012.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's grant of Defendants' motion for summary judgment because Schaefer failed to present evidence sufficient to create a genuine issue of material fact that he did not perform "dual jobs" under the FLSA and IMWL, and that Defendants provided him sufficient notice under the FLSA.

**DATED: May 8, 2015**

s/ Gerald L. Maatman, Jr.

SEYFARTH SHAW LLP
Gerald L. Maatman, Jr.
Jennifer A. Riley
Matthew Gagnon
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603
Telephone:   (312) 460-5000
Facsimile:   (312) 460-7000

*Counsel for Defendants-Appellees
Walker Bros. Enterprises, Inc., Walker
Bros. Highland Park Inc., Walker Food
Services, Inc., Walker Bros. Lake Zurich,
Inc., Walker Bros. Lincolnshire, Inc.,
Walker Bros. West, Inc., and Ray E.
Walker*

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)

The undersigned, counsel of record for Defendants-Appellees furnishes the following in compliance with FRAP Rule 32(a)(7) and Circuit Rule 32:

I hereby certify that this Brief conforms to the rules contained in FRAP Rule 32(a)(7) and Circuit Rule 32. This brief was prepared in Century, using 12 point type in the body and 11 point type in the footnotes, using Word. The referenced word processing system indicates a total word count of 10,695, including footnotes, beginning at page "1," as authorized and determined under FRAP Rule 32(a)(7)(B).


Dated: May 8, 2015

<div style="margin-left:40%">

s/ Gerald L. Maatman, Jr.
SEYFARTH SHAW LLP
Gerald L. Maatman, Jr.
Jennifer A. Riley
Matthew Gagnon
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Counsel for Defendants-Appellees
Walker Bros. Enterprises, Inc., Walker Bros.
Highland Park Inc., Walker Food Services,
Inc., Walker Bros. Lake Zurich, Inc., Walker
Bros. Lincolnshire, Inc., Walker Bros. West,
Inc., and Ray E. Walker*

</div>

## PROOF OF SERVICE

The undersigned, counsel for Defendants-Appellees, hereby certifies that on

May 8, 2015, the Brief of Defendants-Appellees, was filed electronically with the

Clerk of the Court for the United States Court of Appeals for the Seventh Circuit

using the CM/ECF system. The following participants in the case are registered

CM/ECF users and will be served by the CM/ECF system:

<div style="display:flex; gap:4em;">

Douglas M. Werman
Werman Salas P.C.
77 West Washington Street
Suite 1402
Chicago, Illinois 60602
312/419-1008

Jamie G. Sypulski
Law Office Jamie Golden Sypulski
150 North Michigan Avenue
Suite 1000
Chicago, Illinois 60601
312/332-6202

</div>

Dated: May 8, 2015

s/ Gerald L. Maatman, Jr.
SEYFARTH SHAW LLP
Gerald L. Maatman, Jr.
Jennifer A. Riley
Matthew Gagnon
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

*Counsel for Defendants-Appellees*
*Walker Bros. Enterprises, Inc., Walker Bros.*
*Highland Park Inc., Walker Food Services,*
*Inc., Walker Bros. Lake Zurich, Inc., Walker*
*Bros. Lincolnshire, Inc., Walker Bros. West,*
*Inc., and Ray E. Walker*